UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| JEFFREY MARK OLSON, on his own behalf and on behalf of a class of those similarly situated,<br>    Plaintiffs,<br><br>    v.<br><br>TRACY BROWN, in his official capacity as Sheriff of Tippecanoe County,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CAUSE NO.: 4:09-CV-6-AS-PRC |

## OPINION AND ORDER

This matter is before the Court on a Motion to Permit *Ex Parte* Contact with Putative Class Members [DE 13], filed by Plaintiff on February 26, 2009. On March 6, 2009, Defendant filed his Response in Opposition to Motion to Permit *Ex Parte* Contact with Putative Class Members, and Plaintiff filed his Reply in Support of Motion to Permit *Ex Parte* Contact with Putative Class Members on March 13, 2009.

### PROCEDURAL AND FACTUAL BACKGROUND

On January 2, 2009, Plaintiff filed a Verified Class Action Complaint for Declaratory and Injunctive Relief ("Complaint"), as well as a Motion for Class Certification, in the Tippecanoe County Superior Court. The Motion for Class Certification defined the class as "[a]ny and all persons currently confined, or who will in the future be confined, in the Tippecanoe County Jail." Mot. Class Cert. ¶ 2. On January 20, 2009, Defendant filed a Notice of Removal of Civil Action, removing the instant matter to this Court. The Complaint challenges Defendant's alleged practices or policies of (1) opening mail from attorneys outside the presence of the inmate to whom it is addressed, (2) opening mail from courts outside the presence of the inmate, (3) refusing to permit inmates reasonable access to the law library, and (4) refusing to respond to grievances that are filed,

all as violative of Indiana law and the First and Fourteenth Amendments to the United States Constitution.

In the instant Motion, Plaintiff requests leave of court to engage in *ex parte* communication with members of the putative class who are presently incarcerated at the Tippecanoe County Jail by mailing a questionnaire, prepared by Plaintiff's counsel, asking the inmates to recount their experiences concerning Defendant's alleged practices or policies of (1) opening mail from attorneys outside the presence of the inmate to whom it is addressed, (2) opening mail from courts outside the presence of the inmate, (3) refusing to permit inmates reasonable access to the law library, and (4) refusing to respond to grievances that are filed. In particular, Plaintiff alleges that because inmates in the Tippecanoe County Jail may remain there for approximately up to five months, a substantial number of inmates with discoverable information may spend less time there, thereby making it necessary to obtain information from inmates before they are transferred away from the jail. Defendant filed a Response brief opposing Plaintiff's request on March 6, 2009. Plaintiff filed a Reply brief on March 13, 2009.

## ANALYSIS

Federal Rule of Civil Procedure 23(d) "authorizes the court to regulate communications with putative class members even before certification." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2006 WL 1455464, at *3 (E.D.N.Y. May 23, 2006); *See* Fed. R. Civ. P. 23(d). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). However, the Court's discretion in this area is not unlimited. *Williams v. Chartwell Fin. Servs., LTD.*, 204 F.3d 748, 759 (7th Cir. 2000). Rather, "plaintiffs have a right to contact members of the putative class." *Id.* Accordingly, "an order limiting communications between parties and potential class members should be based on

a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Bernard*, 452 U.S. at 101.

While the Court may prohibit Plaintiff from engaging in *ex parte* communications with the putative class members where the record reflects a clear finding of potential abuse, *See Williams*, 204 F.3d at 759, Defendant does not allege any potential abuse in this matter. Rather, Defendant argues that Plaintiff should not be allowed to contact the putative class members, *ex parte*, because such communications would "undermine his ability to maintain order at the facility," "[t]he affidavits previously submitted by Plaintiff . . . contain a considerable amount of duplication" the responses to the proposed questionnaires would not be beneficial, and Plaintiff could instead contact the inmates after they leave the jail. Def.'s Resp. Br. 3.

First, while Defendant may indeed have a genuine interest in maintaining order at the Tippecanoe County Jail, he has failed to articulate how the proposed *ex parte* communication would interfere with his ability to maintain order at the facility. Defendant does not provide any reason supporting how his ability to maintain order would be interfered with. "Although it is the business of correctional officials to maintain order within their institutions, they may not restrict the scope of an inmate's constitutional rights by making automatic and routine assertions of 'discipline and security' in the support of restrictive policies." *Campbell v. Miller*, 787 F.2d 217, 227 n. 7 (7th Cir. 1986). Accordingly, in light of Plaintiff's right to contact putative class members, Defendant has failed to provide facts supporting specific findings that demonstrate a need for limiting Plaintiff's communication with putative class members.[1]

---

[1] Defendant's reason is further undermined by the fact that, although he argues that allowing *ex parte* communication will interfere with his ability to maintain order, Defendant also requests that such contact could be limited to "some reasonable number of inmates at the jail." Def.'s Resp. Br. 3. Further, the proposed questionnaires will consist of communication directly from Plaintiff's counsel to the putative class members, with a request that the putative class members correspond directly with Plaintiff's counsel, rather than through Defendant.

Further, with regard to Defendant's other two arguments, Defendant has failed to demonstrate how the possibility of duplication of information justifies limiting Plaintiff's ability to communicate with putative class members. Plaintiff challenges four of Defendant's alleged policies and practices. Defendant filed an Answer on February 2, 2009, denying that any of these practices or policies exist. Any potential duplication of information that results from the questionnaire answers may help to bolster Plaintiff's case. Further, although Plaintiff may be able to find out the names of the inmates who are presently incarcerated at the Tippecanoe County Jail, as this information is a matter of public record, it may be difficult or impossible for Plaintiff to contact these individuals once they are transferred from the Jail, as their location following release, or transfer, from the Jail generally will not be disclosed. Accordingly, requiring Plaintiff to wait until the inmates leave the Jail could result in loss of discoverable information. Therefore, Defendant has failed to provide a basis justifying a need for limiting Plaintiff's communication with putative class members that would outweigh Plaintiff's right to contact putative class members.[2]

Finally, Defendant argues that any information resulting from the requested *ex parte* communication in this matter should be considered discoverable as the attorney-client relationship, and invocation of such privilege, will not be formed until class certification. However, the Seventh Circuit has held that the existence of an attorney-client relationship is not dependent upon the payment of fees or upon the execution of a formal contract. *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. 1978). Rather, the relationship begins when a client believes that he or she is consulting an attorney in a professional capacity and manifests his intention to seek professional legal advice. *Id.* at 1319. Assessment of the applicability of the attorney-client privilege entails a highly fact-specific inquiry under the circumstances. *In re Grand Jury*

---

[2] Additionally, the Court notes that while Defendant relies on *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977), to support that the prohibition of bulk mailing to prisoners is reasonable, that case is inapplicable to the instant matter as it dealt with prohibitions on inmate-to-inmate solicitation to join a prison labor union, rather than the right of a plaintiff to contact putative class members, as is at issue here.

*Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). As Plaintiff argues in his reply brief, the Court cannot presently determine whether the requested questionnaires will constitute discoverable information. Without the benefit of having the proposed questionnaires before the Court, it cannot determine whether the putative class members would believe that they are consulting an attorney in a professional capacity or manifesting an intent to seek professional legal advice. Accordingly, the Court is currently without enough information to determine whether the proposed questionnaires contain discoverable information and will address this issue if and when it is properly brought before the Court.

## CONCLUSION

Having reviewed the instant Motion, the Court hereby **GRANTS** the Motion to Permit *Ex Parte* Contact with Putative Class Members [DE 13] and **ORDERS** that Plaintiff shall be permitted to contact, *ex parte*, members of the putative class through the mailing of a questionnaire prepared by Plaintiff's counsel that (a) seeks information regarding the disputed practices or policies at issue in the instant matter and (b) is to be returned directly to Plaintiff's counsel.

SO ORDERED this 23rd day of March, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record